# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION
# CIVIL ACTION NO. 3:21-CV-00672-GNS-CHL

**FIRST MERCURY INSURANCE COMPANY,**　　　　　　　　　　**Plaintiff,**

**v.**

**BABCOCK ENTERPRISES, INC., et al.,**　　　　　　　　　　**Defendants.**

## MEMORANDUM OPINION AND ORDER

Multiple discovery motions are currently pending before the Court including: (1) the Motion to Compel filed by Plaintiff First Mercury Insurance Company ("First Mercury") (DN 69); (2) First Mercury's Motion to Bifurcate and Stay (DN 81); (3) the Motion to Compel filed by Defendant Doster Construction, Inc. ("Doster) (DN 86); and (4) First Mercury's Motion for Protective Order (DN 87). Responses and replies as permitted by LR 7.1(c) and this Court's orders (DNs 62, 80) have been filed. (DNs 71, 84, 90, 91.) Therefore, these matters are ripe for review.

## I.　BACKGROUND

This action relates to an underlying arbitration proceeding in Louisville, Kentucky styled *HRB Louisville LLC v. Doster Construction Company, Inc.*, Case No. 01-20-0005-1064, which is pending before the American Arbitration Association (the "Underlying Arbitration"). The Underlying Arbitration relates to claims by HRB Louisville, LLC, the owner of an off-campus student housing complex near the University of Louisville, for allegedly inadequate and/or defective construction of the complex. Doster served as the general contractor on the project, and Defendant Babcock Enterprises, Inc. d/b/a R&B Construction ("R&B") was one of multiple subcontractors on the project. (*See* DNs 1, 8, 23; DN 40, at PageID # 190.)

First Mercury filed this action for declaratory judgment against Doster and R&B. (DN 1.) First Mercury alleged that it issued insurance under multiple policies to R&B that were in effect during the relevant period and that Doster was an additional insured under some of the policies. (*Id.* at ¶¶ 10, 12.) First Mercury sought a declaration that it had no duty to defend or indemnify either R&B or Doster because of "R&B's failure to satisfy the conditions set forth in the Independent Contractors Limitation of Coverage Endorsement" to the applicable policies. (*Id.* at ¶¶ 24-27.) R&B counterclaimed for breach of contract, common law and statutory bad faith, and breach of fiduciary duty. (DN 8.) Doster counterclaimed for a declaratory judgment that coverage did exist and for damages incurred, including punitive damages. (DN 23.) While First Mercury filed motions to dismiss both counterclaims (DNs 22, 24), the Court dismissed only R&B's claim for breach of fiduciary duty and statutory bad faith under Georgia law; R&B's claim for statutory bad faith under Kentucky law remains pending. (DN 40.)

The Parties' progress in this litigation was marked by several discovery disputes, some of which they resolved without Court intervention and some of which necessitated the instant motions before the Court. (DNs 51, 53, 55, 57, 59, 61, 62, 78, 80.) The Court has also extended the deadlines in this case multiple times due to delays related to both these discovery disputes and the Underlying Arbitration, which has significantly impacted the Parties' ability to conduct discovery in an expeditious manner. (DNs 45, 46, 53, 57, 62, 76, 77, 80, 92, 93.) Recently, the Parties advised that a settlement in principal had been reached in the Underlying Arbitration and that the settlement, once finalized and funded, would fully resolve all claims between First Mercury and Doster. (DNs 96, 98.) While those claims have not yet been dismissed, the Court will keep the Parties' representations in mind when addressing the motions presently pending before the Court.

## II. DISCUSSION

### A. First Mercury's Motion to Compel (DN 69)

First Mercury moved to compel responses from R&B to eighteen requests for admission that it served on R&B or in the alternative to deem each of the eighteen requests admitted. (DN 69.) It represented that it served eighteen requests for admission on R&B on January 25, 2023, and that R&B only submitted objections in response; "R&B did not admit or deny a single request." (DN 69, at PageID # 283; *see also* DNs 69-1, 69-2, 71-1.) First Mercury argued that the objections asserted by R&B were "evasive, unresponsive, and wholly improper." (DN 69, at PageID # 284.) In its response, R&B persisted in its objections, asserting that the requests for admission at issue "related to undefined/unclear terms of art and legal conclusions bearing directly on the coverage dispute that forms the basis of this case." (DN 71, at PageID # 354.) It argued that the terminology used by First Mercury was "legally-charged" and that the requests themselves are improper. (*Id.* at 358-60.) R&B also indicated that it supplemented its responses but that First Mercury "remains unsatisfied." (*Id.* at 355; DN 71-2.) R&B attached its supplemental responses to its filing, and it appears the same were served October 23, 2023, the same day First Mercury filed its motion to compel and a day before R&B filed its response. (*Compare* DN 69, *with* DN 71-2.)

Federal Rule of Civil Procedure 36 permits requests for admissions relating to a broad range of matters, including "facts, the application of law to fact or opinions about either." Fed. R. Civ. P. 36(a)(1)(A). A party responding to a request for admission may (1) admit, (2) deny, (3) assert a lack of knowledge despite reasonable inquiries to obtain such knowledge, or (4) object. *See id.* at (a)(4)-(a)(5). "A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must

3

specify the part admitted and qualify or deny the rest." *Id.* at (a)(4).  When a party objects under subsection (5), it must state specific grounds for such objection and cannot "object solely on the ground that the request presents a genuine issue for trial." *Id.* at (a)(5).  Under subsection (6), a party "may move to determine the sufficiency of an answer or objection" to a request for admission.  *Id.* at (a)(6).  Unless the court finds the responding party's objection is justified it must order that party serve an answer.  *Id.*  "On finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served."  *Id.*

While there are eighteen total requests at issue, there are effectively only nine separate requests.  The first nine requests are as follows:

> **REQUEST NO. 1:** Admit that R&B did not self-perform any work on the Project.
> **REQUEST NO. 2:** Admit that R&B hired subcontractors to perform portions of R&B's scope of work on the Project.
> **REQUEST NO. 3:** Admit that the subcontractors R&B hired to perform work on the Project were hired on a fixed-price basis.
> **REQUEST NO. 4:** Admit that R&B did not control the means and methods of how the subcontractors performed their work on the Project.
> **REQUEST NO. 5:** Admit that R&B did not participate in the hiring or termination of any worker performing work for one of R&B's subcontractors on the Project.
> **REQUEST NO. 6:** Admit that the subcontractors R&B hired to perform work on the Project were independent contractors.
> **REQUEST NO. 7:** Admit that R&B was not an additional insured for any Policy covering any work performed under the Subcontract.
> **REQUEST NO. 8:** Admit that any subcontracts R&B entered into on this Project, whether oral or written, did not require that R&B be listed as an additional insured on their respective insurance policies.
> **REQUEST NO. 9:** Admit that R&B was not an additional insured for any Policy covering any work performed under any subcontract.

(DNs 69-1, 69-2, 71-1, 71-2.)  The next nine requests simply substituted "Babcock" for "R&B" despite the requests at issue defining "R&B" to mean "Babcock Enterprise, Inc. d/b/a R&B Construction."  (DN 69-1, at PageID # 294; DNs 69-1, 69-2, 71-1, 71-2.)  R&B's initial responses did not include any admissions, partial admissions, denials, or partial denials.  (DNs 69-2, 71-1.)

4

Instead, as to all the requests, R&B objected to various words/phrases therein as "vague, overbroad, and ambiguous as to [First Mercury]'s intended meaning" including the words/phrases "self-perform," "hired," "subcontractors," "scope of work," "fixed price basis," "control," "means and methods," "participate," "worker," "independent contractors," "additional insured," "covering any work," "subcontract," "subcontracts," "subcontract entered into on this Project," and "any policy covering." (DNs 69-2, 71-1.) R&B then stated as to these words/phrases that they were "neither specifically defined nor is [their] meaning plain," some of them were "legal terms of art with importance and/or impact," and they were "susceptible to numerous interpretations." (DNs 69-2, 71-1.) The Court disagrees with R&B that these words are vague, overbroad, or ambiguous. To the extent that R&B had concerns about the meaning of the words, Rule 36 permits it to state in detail why it cannot admit or deny it a request and/or to "qualify an answer or deny only a part of the matter" though if the responding party does the latter it must also "specify the part admitted and qualify or deny the rest." Fed. R. Civ. P. 36(a)(4). R&B cited no requirement that a request for admission come with the type of extensive definitions R&B would have preferred but to which R&B would have in all likelihood also objected. And as to the notion that these words are "legally charged," Rule 36 permits the service of requests pertaining to the application of law to fact or opinions about the application of law to fact. Fed. R. Civ. P. 36(a)(1)(A). This here includes concepts such as whether an entity is an independent contractor or subcontractor. R&B's vagueness, overbreadth, and ambiguity objections are, thus, rejected.

R&B also included the same objection as to every request, which seems to represent its largest complaint about the requests:

> Further, to the extent this request seeks information on a nuanced issue of law or critical question of fact for the fact finder, it is inappropriate. "Requests for admissions as to central facts in dispute are beyond the proper scope of the rule. Such requests have consistently been held improper." *Salem v. Wortman*, 9th Dist.

> No. 8769, 1978 Ohio App. Lexis 8043, at 7. This Request must be considered related to a "central facts in dispute" *Id.* Consequently, because these requests "go to the heart of the case," these issues "should be decided upon at [*sic*] complete trial." *United States v. $30,354.00 in United States Currency*, 863 F. Supp. 442, 445 (W.D. Ky. 1994).
>
> Requests for Admission should be used sparingly to dispense with very finite issues. They are intended to be "used as a scalpel – not a meat axe" and are not intended as a procedural vehicle to back a Defendant into a corner or shift the burden of proof. *Francis v. Marks*, 2006 U.S. Dist. Lexis 22576, *6. Without additional detail or further definition of terms, no complete response to this Request can be made.

(DNs 69-2, 71-1.) The Court finds this objection without merit. True, "[r]equests for admissions are not a general discovery device." *Misco, Inc. v. U.S. Steel Corp.*, 784 F.2d 198, 205 (6th Cir. 1986) (citing 8 C. Wright & A. Miller, Federal Practice and Procedure § 2253, at 706 & n.23 (1970)) (upholding a district court ruling limiting discovery where party had served 2,028 purported requests for admission less than a month after filing complaint and before answers to complaint were filed). Rule 36 serves two vital purposes: "first to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be." Fed. R. Civ. P. 36 advisory committee's note to 1970 amendment; *O'Neill v. Medad*, 166 F.R.D. 19, 21 (E.D. Mich. 1996). Notwithstanding these purposes, in direct opposition to R&B's position, Rule 36 permits a party to serve requests for admission relating to facts, opinions about facts, the application of law to fact, or opinions about the application of law to fact, Fed. R. Civ. P. 36(a)(1)(A), and explicitly states that a party cannot "object solely on the ground that the request presents a genuine issue for trial." Fed. R. Civ. P. 36(a)(5). The latter is the gravamen of R&B's objections, and, thus, by the language of the rule alone, R&B's objections are improper. The cases upon which R&B relies to support the propriety of its objection are unpersuasive. *Salem* is not a federal case interpreting the federal rules, let alone a Sixth Circuit case, and thus its result and reasoning are not binding on this Court. *Salem v. Wortman*, No. 8769,

6

1978 WL 215348 (Ohio Ct. App. Aug. 30, 1978). R&B's quotation from *United States v. $30,354.00* is taken out of context. In that case, the court refused to deem admitted certain requests for admission to which the claimant did not respond in ruling on the government's motion for summary judgment. *United States v. $30,354.00 in U.S. Currency*, 863 F. Supp. 442, 444-45 (W.D. Ky. 1994). The court noted that it had discretion to allow a response to admissions even after the time prescribed for a response had run, then stated:

> Deciding dispositive issues against a party because of a missed deadline does not further the interests of justice. In the matter before this Court, the admissions requested go to the heart of the case, and accordingly should be decided upon a complete trial. Without a doubt, Claimant's attorney proceeded carelessly by not complying with the thirty-day deadline. Regardless of Claimant's tardiness, the merits of the case are contested and a just disposition will be best achieved by considering Claimant's answers.

*Id.* at 445. Thus, the statement R&B quoted related to whether to deem not-responded-to requests admitted at the summary judgment stage, not whether someone should be able to object to answering a tendered request at all. Finally, *Francis* is factually distinguishable. The *Francis* plaintiff served 248 requests for admission that "[e]ssentially track[ed] the allegations contained in the 121 numbered paragraphs of his Complaint." *Francis v. Marks*, No. 4:05CV01090 RSW/JTR, 2006 WL 8445238, at *2 (E.D. Ark. Apr. 18, 2006). The *Francis* court noted that "timing and voluminous nature of [p]laintiff's Request for Admissions create[d] at least the appearance that this discovery was drafted with an eye on circumventing the limitation on the number of interrogatories contained in Fed. R. Civ. P. 33(a)." *Id.* at *3. It also noted that given that the facts of that case "involve[d] a series of complex and sophisticated real estate transactions" "a set of *carefully crafted* requests for admissions might [have been] very useful to [p]laintiff in streamlining and simplifying th[e] case." *Id.* (emphasis in original). This case is nothing like *Francis*. First Mercury's requests for admission do not appear to be a substitute for interrogatories

7

and do appear to have been crafted with an eye toward simplifying the facts at issue. If, in R&B's eyes, the requests centered on the issues of fact in the case that were "central" and "disputed," then R&B's proper response was to deny the request, not to object that no answer could be given.

Having rejected R&B's objections, the Court now turns to the sufficiency of its responses. In the supplemental responses, which First Mercury did not have when it filed its motion, R&B did what First Mercury requested in its motion: it tendered a response and not merely an objection. (DN 71-2.) The Court largely finds the supplemental responses sufficient but will require further supplementation in two limited respects. First, Rule 36 requires requested to be "admitted" or "denied" and so R&B must serve supplemental responses to Request Nos. 1, 2, 4, and 6 to firmly admit or deny the request, not to "confirm" facts. Second, the Court will also require R&B to supplement its response to Requests Nos. 10-18 with a response other than "see objection/response" to another request. The Court finds that the supplemental responses to Request Nos. 3, 5, 7, 8, 9 are sufficient because they do include the word "denied." The Court is hamstrung in its ability to consider any further issues because the briefing does not specifically address R&B's supplemental responses. Both First Mercury and R&B should consider the Court's guidance herein, meet and confer again, and may proceed directly to motion practice if there are further issued to be addressed concerning R&B's supplemental responses.

      **B.**    **First Mercury's Motion to Bifurcate and Stay (DN 81)**

First Mercury filed a motion seeking to bifurcate any trial on R&B's common law and statutory bad faith claims from any trial on its own declaratory judgment claims regarding the existence of coverage and to stay discovery on those bad faith claims. (DN 81.) R&B opposed that request. (DN 84.)

While the caption of First Mercury's motion referenced a stay pending resolution of the Underlying Arbitration, the body of its motion and reply made clear that it was seeking a stay pending resolution of both the Underlying Arbitration and the resolution of its own declaratory judgment claims. (DNs 81, 90.)  As a settlement of the Underlying Arbitration is in progress (DNs 96, 98), First Mercury's request for a stay pending resolution of that proceeding is almost certainly moot.  As to its request to bifurcate its declaratory judgment claims from R&B's bad faith claims and stay discovery on the latter, it argued that bifurcation was appropriate to "avoid the potentially unnecessary (and huge) expense and inconvenience of litigating claims that may ultimately be mooted depending on the resolution of the Underlying Arbitration or First Mercury's declaratory judgment action." (DN 81, at PageID # 503.)  It also argued that bifurcation would avoid potential juror confusion that would prejudice First Mercury at trial given that the bad faith claims would involve issues such as First Mercury's intent that are not relevant to First Mercury's declaratory judgment claims and that might prejudice the jury against First Mercury on the coverage issues. (*Id.* at 503-04.)  It emphasized that a stay of discovery related to the bad faith claims would also be appropriate to avoid the disclosure of material protected by attorney-client privilege and/or the work product doctrine. (*Id.* at 504-05.)

R&B opposed the request, arguing that its bad faith claims are inexplicably intertwined with the coverage issues such that the Court should not bifurcate or stay discovery. (DN 84.)  It argued that its claims and defenses "relate specifically to the process of denying coverage and communication related thereto" and that its bad faith claims "overlap with and implicate directly the exact same conduct, policies, decisions, and documents that bear on the claims and defenses related to coverage." (*Id.* at PageID # 515.)  Specifically, it noted that it asserted defenses including waiver and estoppel as to coverage that were "either coextensive of or overlap[ped] with

9

matters that [R&B] would have to investigate to establish evidence of bad faith." (*Id.* at 520.) It relied heavily on *Tharpe v. Illinois Nat. Ins. Co.*, 199 F.R.D. 213 (W.D. Ky. 2001), in support of its arguments, arguing that this Court, like the *Tharpe* court, should deny the request before it. In *Tharpe*, the court found that the case was distinguishable from the usual case where bifurcation and stay was appropriate because all of the claims related to the insurance company's handling of a chiropractor's medical bill and "[t]hus, the concerns regarding relevancy and prejudice" usually at issue in such cases "t[ook] on different contours in the context of th[e] action." *Id.* at 214. The court further stated that the relevant issues between the bad faith claims and the plaintiff's claim for basic reparations benefits were inexplicably intertwined because both would turn on the same evidence: evidence that the insurer "acted with a reasonable basis or upon a reasonable foundation i[n] that its review of the chiropractor's bill established that some charges were excessive and/or unnecessary." *Id.* at 215. Thus, the court refused to bifurcate and stay discovery on the bad faith claims. *Id.* R&B urged the Court to follow *Tharpe* and do the same.

In its reply, First Mercury largely reiterated its position that bifurcation and stay were appropriate. (DN 90.) But it also pushed back on R&B's claim that the bad faith and coverage claims were inexplicably intertwined, stating, "There is inevitably some overlap between a coverage claim and a bad faith claim but R&B has done nothing to explain why the coverage and bad faith claims in this case are more closely related than the standard situation where bifurcation is strongly favored." (*Id.* at PageID # 599.) It also attempted to distinguish this case from *Tharpe*, arguing that the particular circumstances of this case did not preclude bifurcation or stay. (*Id.* at 599-600.)

Rule 42(b) provides, "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims,

counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). Further, "[t]rial courts have broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined." *Hahn v. Star Bank*, 190 F.3d 708, 719 (6th Cir. 1999); s*ee also Bangas v. Potter*, 145 Fed. App'x 139, 141 (6th Cir. 2005). Thus, whether to bifurcate claims a case and whether to hold discovery in abeyance are both within the Court's discretion. *See Wilson v. Morgan*, 477 F.3d 326, 339 (6th Cir. 2007); *Smith v. Allstate Ins. Co.*, 403 F.3d 401, 407 (6th Cir. 2005); *Warren v. Fed. Ins. Co.*, 358 F. App'x 670, 676 (6th Cir. 2009). In deciding whether to bifurcate, courts should look to "the potential prejudice to the parties, the possible confusion of the jurors, and the resulting convenience and economy." *Wilson*, 477 F.3d at 339 (quoting *Martin v. Heideman*, 106 F.3d 1308, 1311 (6th Cir. 1997)). "Courts should look to case-specific facts to determine whether bifurcation is proper, placing the burden on the party seeking bifurcation to show separation of issues is the most appropriate course." *White v. ABG Caulking Contrs., Inc.*, No. 5:13-CV-00194-TBR, 2014 U.S. Dist. LEXIS 32413, at *3 (W.D. Ky. Mar. 13, 2014). Courts frequently bifurcate claims addressing coverage and bad faith claims against insurance companies, as deciding the first claim may obviate the need to litigate the second. *See, e.g.*, *Live Nation Worldwide, Inc. v. Secura Ins.*, 298 F.Supp. 3d 1032, 1035-36 (W.D. Ky. 2018); *Graves v. Standard Ins. Co.*, No. 3:14-cv-558-DJH, 2015 WL 2453156, at *3 (W.D. Ky. May 22, 2015); *Galloway v. Nationwide Mut. Fire Ins. Co.*, No. 3:09-cv-491-JDM, 2010 WL 3927815, at *1 (W.D. Ky. Oct. 5, 2010); *Brantley v. Safeco Ins. Co. of Am.*, No. 1:11-CV-00054-R, 2011 WL 6012554, at *2-3 (W.D. Ky. Dec. 1, 2011); *Bibbey v. Amica Mut. Ins. Co.*, No. 5:20-CV-00516-EBA, 2021 WL 5204294, at *2-3 (E.D. Ky. Apr. 16, 2021); *Al J. Schneider Co. v. Hartford Fire Ins. Co.*, No. 3:20-CV-00863-BJB, 2021 WL 5702433 (W.D. Ky. Dec. 1, 2021). But First

Mercury cited no binding authority to support that a stay of discovery is *required* when a court bifurcates claims, merely that it is within the Court's discretion.

Based on the Court's review of the briefs and the case, the Court concludes that bifurcation is appropriate but not a stay of discovery. As to bifurcation, separate trials regarding coverage and R&B's bad faith claims would avoid potential prejudice and juror confusion that could result from injecting First Mercury's intent into a discussion about coverage. It would also promote convenience because if First Mercury prevails on its coverage argument, then R&B's bad faith claim necessarily fails. *See Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993) (requiring party to show insurance company had obligation to pay under policy as first element of bad faith claim). These are persuasive reasons to bifurcate these claims for trial purposes. And while the Court understands why the latter could—and often is—a reason to stay discovery at the *outset* of a case, in this case, the Court concludes a stay is not appropriate. This case was first filed on November 5, 2021. (DN 1.) The Court's initial scheduling order was entered on March 18, 2022. (DN 30.) While as noted above, there were numerous delays related to the Underlying Arbitration, the fact remains that discovery has been ongoing for nearly-two-and-a-half years. The Court cannot find that a stay of discovery at this stage would further convenience when it could instead add years to this litigation and frustrate "the just, speedy, and inexpensive determination of" this action. Fed. R. Civ. P. 1. While the proof related to First Mercury's coverage claim is not as inextricably intertwined with R&B's bad faith claims as it was in *Tharpe*, it is intertwined to an unusual degree. R&B noted in its response that part of its defense to First Mercury's coverage claim rests on the delay between First Mercury being advised of the allegations/claims at issue in the Underlying Arbitration in approximately May 2019 and First Mercury's eventual defense of R&B pursuant to an October 2020 reservation of rights letter. (DN 84, at PageID # 512.) These facts are intertwined

with bad faith to a significant degree, and while First Mercury's response makes clear that it does not agree that is a viable defense, at this stage it is not appropriate to decide the viability of defenses. First Mercury raised broadly the concern that allowing bad faith discovery at this stage will interject issues related to attorney-client privilege and work product. It argued that if bad faith discovery was allowed to begin, it would "undoubtedly be forced to respond to interrogatories and request for production seeking privileged materials that could potentially be used to harm R&B or Doster in the Underlying Arbitration, including First Mercury's claim files containing the mental impressions and legal strategies formulated by defense counsel in the Underlying Arbitration." (DN 81, at PageID # 505.) But given the Parties' representations that a settlement in principle has been reached in the Underlying Arbitration, these concerns ring as hollow support for a stay. Any remaining concerns related to privilege or work product protection can be safely addressed through the normal discovery process, including the preparation of a privilege log and motion practice as necessary. Thus, the Court will grant First Mercury's motion to bifurcate R&B's bad faith claims but deny the motion to stay discovery on those claims.

In doing so, the Court notes that it seems as though the coverage issue could proceed to dispositive motion briefing prior to the close of discovery related to bad faith. The Court will direct the Parties to confer regarding this possibility and to address it in the proposed amended scheduling order it directs them to submit as set forth below.

### C. Doster's Motion to Compel (DN 86) and First Mercury's Motion for Protective Order (DN 87)

The final issue pending before the Court concerns proposed topics for the deposition of First Mercury's Fed. R. Civ. P. 30(b)(6) representative. Specifically, Doster filed a motion to compel First Mercury to produce a corporate representative to testify to the following topics listed in the deposition notice served by Doster to which First Mercury has objected:

    3.    First Mercury's use and interpretation of the Independent Contractors Limitation of Coverage Endorsement (FMIC-GL-2356 (10/2012)), any prior or subsequent version of this endorsement, or any equivalent endorsement(s).

    4.    Any and all instances or circumstances where First Mercury has denied coverage to an additional insured based on the Independent Contractors Limitation of Coverage Endorsement (FMIC-GL-2356 (10/2012)), any prior or subsequent version of this endorsement, or any equivalent endorsement(s).

(DN 86-1, at PageID # 563; DN 86.)  First Mercury filed a cross-motion for protective order.  (DN 87.)  R&B filed a response to First Mercury's motion for protective order opposing the same and attached its own deposition notice, which contains very similar topics:

    3.    FMIC's use and interpretation of the Independent Contractors Limitation of Coverage endorsement (FMIC-GL-2356 (10/2012)), any prior or subsequent versions of this endorsement, or any equivalent endorsement(s). By way of explanation, the designee for this topic should be able to discuss whether any other versions of this same exclusion (using different language) have been employed by FMIC as part of its Commercial General Liability Policies in the last twenty years through the present.

    4.    Any and all instances or circumstances where FMIC has denied coverage to its' insured based on the Independent Contractors Limitation of Coverage Endorsement (FMIC-GL-2356 (10/2012)), any prior or subsequent version of this endorsement, or any equivalent endorsement(s). By way of explanation, the designee for this topic should be able to discuss information regarding other times/instances (without reference to identifying information for the insured) this exclusion in the form at issue in this litigation has been used to disclaim coverage.

(DN 91-1, at PageID # 613.)  Given this overlap, the Court will proceed to address the merits of the dispute notwithstanding Doster's anticipated settlement with First Mercury and will construe First Mercury's motion for protective order as also seeking to prohibit testimony on topics three and four of R&B's notice set forth above.

        Trial courts have wide discretion in dealing with discovery matters.  *See S.S. v. E. Ky. Univ.*, 532 F.3d 445, 451 (6th Cir. 2008) (quoting *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981)).  Fed. R. Civ. P. 26(b)(1) provides that "[p]arties may obtain discovery

regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). This language is broadly construed by the federal courts to include "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). When an objection to relevance is raised or the relevance of the information sought is not apparent, the party seeking discovery must demonstrate that the requests are relevant to the claims or defenses in the action. *Anderson v. Dillard's, Inc.*, 251 F.R.D. 307, 309-10 (W.D. Tenn. 2008). Otherwise, a party resisting discovery bears "the burden to establish that the material either does not come within the scope of relevance or is of such marginal relevance that the potential harm resulting from production outweighs the presumption in favor of broad disclosure." *Invesco Institutional (N.A.), Inc. v. Paas*, 244 F.R.D. 374, 380 (W.D. Ky. 2007). *See also Lillard v. Univ. of Louisville*, No. 3:11-CV-554-JGH, 2014 WL 12725816, at *6 (W.D. Ky. Apr. 7, 2014). The scope of discovery is not without limits, however. In assessing whether information is within the scope of discovery, the Court is directed to consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Generally, a party may take discovery by any method permitted under the Federal Rules of Civil Procedure. One such method is seeking the deposition of a representative of a "a public or private corporation, a partnership, an association, a governmental agency, or other entity" pursuant to Fed. R. Civ. P. 30(b)(6).

First Mercury objected to providing deposition testimony on the topics above arguing that the proposed testimony was irrelevant and would reveal the privileged or proprietary information

15

of third parties. (DN 87.) First Mercury emphasized that any issues regarding the interpretation of the policy it issued will be based on the language of the policy itself and the facts of this case, not what First Mercury did in other cases on other facts. (*Id.*) It also argued that if the proposed topics were relevant to anything, they would be relevant to R&B's bad faith claims and cited to its separate motion to bifurcate and stay for reasons any discovery on that front should not occur at this time. (*Id.*)

Doster and R&B both contended that the proposed topics were relevant to resolve ambiguities in the policy before the Court. Doster specifically emphasized that it wanted to discover information about the "evolution" of the policy language at issue to discern its meaning and that its topics were aimed at figuring out whether this was an issue of first impression. (DN 86.) R&B emphasized that it did not want personal information about First Mercury's policyholders and simply wanted testimony about First Mercury's conduct.

On balance, the Court finds that if the topics three and four quoted above are relevant to R&B's bad faith claims, which the Court has bifurcated but on which the Court did not stay discovery in the instant opinion. The Court agrees with First Mercury that the primary source of evidence as to the meaning of the policy will be the policy language itself. *See, e.g.*, *Liberty Mut. Ins. Co. v. Est. of Bobzien by & through Hart*, 377 F. Supp. 3d 723, 735 (W.D. Ky. 2019), *aff'd sub nom. Liberty Mut. Ins. Co. v. Est. of Bobzien*, 798 F. App'x 930 (6th Cir. 2020) (quoting in part *Nationwide Mut. Ins. Co. v. Nolan*, 10 S.W.3d 129, 131-32 (Ky. 1999)) ("Insurance policies 'should be interpreted according to the parties' mutual understanding at the time they entered into the contract and [s]uch mutual intention is to be deduced, if possible from the language of the contract alone.' "). But how First Mercury developed the language at issue and whether it has ever used it to deny coverage in other cases does bear on the other issues in the case. Thus, the

16

information sought by Doster and R&B is relevant and discoverable under Rule 26. As to the privacy concerns raised by First Mercury, the Court takes R&B at its word in its motion and in its proposed topic(s) that it is not seeking the identifying information of third party insureds and directs R&B to limit its inquiry appropriately to avoid seeking such information. Accordingly, First Mercury's Motion for Protective Order (DN 87) will be denied, and Doster's Motion to Compel (DN 86) will be granted.

### III. ORDER

For the reasons set forth above, IT IS HEREBY ORDERED as follows:

(1) First Mercury's Motion to Compel (DN 69) is **GRANTED IN PART** and **DENIED IN PART** as set forth herein. R&B shall serve supplemental responses in accordance with the instant memorandum opinion and order within **fourteen days** of entry of the same.

(2) First Mercury's Motion to Bifurcate and Stay (DN 81) is **GRANTED IN PART** and **DENIED IN PART** as set forth herein. R&B's bad faith clams are **BIFURCATED** from the trial of First Mercury's declaratory judgment claims, but discovery on the bad faith claims is **NOT** stayed pending resolution of the declaratory judgment claims.

(3) First Mercury's Motion for Protective Order (DN 87) is **DENIED**, and Doster's Motion to Compel (DN 86) is **GRANTED**. First Mercury's corporate representative shall provide testimony on topics no. 3 and topic no. 4 in Doster/R&B's 30(b)(6) deposition notice, but R&B shall avoid seeking the identifying information of third parties.

(4)     On or before **August 30, 2024**, First Mercury and R&B shall confer and submit a proposed amended scheduling order in light of the rulings herein that is tailored to the issues presently for decision before the Court and the present status of the case. Their proposal shall specifically address whether expert discovery is necessary for either the coverage claims or for the bad faith claims and shall consider whether the Parties can set a deadline for filing dispositive motions related to coverage prior to the close of all discovery/discovery on the bad faith claims. Their proposed schedule shall also take into account the age of the case and the number of extensions previously granted. Doster need not participate in the discussions or join in the proposed schedule in light of the pending settlement.

cc: Counsel of record