UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:21-CV-00672-GNS

FIRST MERCURY INSURANCE CO.                                         PLAINTIFF

v.

BABCOCK ENTERPRISES, INC. et al.                                   DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's Motion for Summary Judgment (DN 119) and Defendant's Motion for Leave to File Sur-Reply (DN 136). The motions are ripe for adjudication.

**I.        STATEMENT OF FACTS AND CLAIMS**

An off-campus student housing project, known as the Clubhouse Apartments, was constructed near the University of Louisville campus, which was substantially completed in 2015. (Compl. ¶¶ 6, 8, DN 1). Subsequently, a dispute arose over the work performed on the project, and the project owner, HRB Louisville, LLC ("HRB"), filed an arbitration styled *HRB Louisville LLC v. Doster Construction Company, Inc.*, Case No. 01-20-0005-1064 (pending before the American Arbitration Association) ("Underlying Arbitration"). Doster Construction Company, Inc. ("Doster") was the general contractor for the project, and Babcock Enterprises, Inc. d/b/a R&B Construction ("Babcock") was a subcontractor which worked on exterior siding and cladding for the project. (Compl. ¶ 8; Def.'s Am. Answer & Countercl. 2, DN 23 [hereinafter Doster's Am. Answer & Countercl.]). Several other lawsuits were filed relating to the project. (Pl.'s Mot. Summ. J. Ex. A, at 12-13, DN 119-1 [hereinafter Settlement Agreement]).

First Mercury had issued four consecutive one-year insurance policies to Babcock that were in effect from December 2014 to December 2018. (Compl. ¶ 10, DN 1). The contract between Doster and Babcock allegedly required that Doster be added as an additional insured to Babcock policies throughout the project and for two additional years following its completion. (Compl. ¶ 12). First

1

Mercury defended Babcock for claims of defective work asserted by HRB under a reservation of rights. (Compl. ¶ 11). Doster then tendered its defense of the Underlying Arbitration to First Mercury, which agreed to defend Doster as an additional insured under Babcock's policies subject to its reservation of rights under the initial, second, and third First Mercury Policies. (Compl. ¶ 12).

Each First Mercury policy issued to Babcock contained an endorsement captioned "Independent Contractors Limitation of Coverage" providing that independent contractors hired by Babcock must name Babcock as an additional insured under the subcontractors' policies with specified amounts of coverage. (Compl. ¶ 13). First Mercury contends that Babcock hired Robert Montgomery and/or Montgomery Village, Inc. ("Montgomery") as a subcontractor on the project without a written contract defining the scope of Montgomery's work. (Compl. ¶ 14). First Mercury claims that Montgomery disputes the scope of the work it was to perform under its unwritten contract with Babcock. (Compl. ¶ 14).

First Mercury asserts that Babcock tendered the defense of the Underlying Arbitration to Auto Owners Insurance Company ("Auto Owners"), which insured Montgomery Village on the project. (Compl. ¶ 15). First Mercury further alleges that Auto Owners declined Babcock's tender on the basis that Babcock was not an insured under policies Auto Owners issued to Montgomery Village. (Compl. ¶ 16). First Mercury further claims Babcock did not satisfy conditions precedent to coverage under its policies because none of the individuals or entities that Babcock used directly or indirectly to complete work on the project had insurance naming Babcock as an additional insured. (Compl. ¶ 18).

On November 5, 2021, First Mercury filed this action against Babcock and Doster seeking declaratory relief regarding First Mercury's duty to defend or indemnify Defendants in the Underlying Arbitration. (Compl. ¶¶ 23-27). Babcock asserted counterclaims against First Mercury, including breach of contract, common-law bad faith, Kentucky Unfair Claims Settlement Practices Act ("KUCSPA"), Georgia Unfair Claims Settlement Practices Act ("GUCSPA"), and breach of fiduciary duties. (Def.'s Answer & Countercls. 5-6, DN 8). Doster also filed an amended answer and

counterclaim seeking declarations of First Mercury's duty to defend or indemnify it in the Underlying Arbitration. (Doster's Am. Answer & Countercl. 12-14). The Court subsequently dismissed Babcock's counterclaims for breach of fiduciary duty and under the GUCSPA. (Order 6-7, DN 40).

During the pendency of the action, the parties to this action and related lawsuits (including the insurers) negotiated a global settlement of claims, subject to specific excepted claims. (Settlement Agreement 1-91). Representatives of First Mercury, Babcock, and Doster then executed the Settlement Agreement. (Settlement Agreement 36, 43-44). First Mercury has now moved for summary judgment on the remaining counterclaims asserted by Babcock.[1] (Pl.'s Mot. Summ. J., DN 119). Babcock moved for leave to file a sur-reply. (Def.'s Mot. Leave File Sur-Reply, DN 136).

## II.    JURISDICTION

The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 as there is complete diversity between Plaintiff and Defendants and the amount in controversy exceeds the sum of $75,000.00.

## III.    DISCUSSION

### A.    Plaintiff's Motion for Summary Judgment[2]

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] party moving for summary judgment may satisfy its burden [of] show[ing] that there are no genuine issues of material fact simply 'by pointing out to the court that the [non-moving party], having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.'" *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005) (quoting *Street v. J.C. Bradford &*

---

[1] As a result of the global settlement, Doster has dismissed its counterclaim against First Mercury. (Stipulation Dismiss in Part, DN 118).
[2] Under LR 7.1(d), motions and responses to motions are limited to 25 pages. Babcock's response exceeded that limitation, and it failed to seek leave from the Court.

*Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)).  Similarly, the movant may meet its burden by offering evidence negating an essential element of the non-moving party's claim.  *See Dixon v. United States*, 178 F.3d 1294, 1999 WL 196498, at *3 (6th Cir. 1999).

After the movant either shows "that there is an absence of evidence to support the nonmoving party's case," or affirmatively negates an essential element of the non-moving party's claims, the non-moving party must identify admissible evidence that creates a dispute of fact for trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  While the Court must view the evidence in a light most favorable to the non-moving party, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted).  "The mere existence of a scintilla of evidence in support of the [moving party's] position [is] [] insufficient; there must be evidence on which the jury could reasonably find for the [moving party]."  *Anderson*, 477 U.S. at 252.

### 1.  *Whether the Settlement Agreement Clearly & Unambiguously Released Babcock's Counterclaims*

The parties disagree as to whether the Settlement Agreement specifically released Babcock's counterclaims against First Mercury.  (Pl.'s Mot. Summ. J. 8-10, DN 119; Def.' Resp. Pl.'s Mot. Summ. J. 17-20 DN 127).  First Mercury contends that the counterclaims are encompassed in the terms of the Settlement Agreement, and Babcock agreed to release those counterclaims as part of the settlement.  (Pl.'s Mot. Summ. J. 10).  Babcock maintains that the terms of the Settlement Agreement did not include a release of its counterclaims.  (Def.'s Resp. Pl.'s Mot. Summ. J. 17-20; Def.'s Sur-Reply Pl.'s Mot. Summ. J. 3-4, DN 136-1).

By its terms, the Settlement Agreement is governed by Kentucky law.  (Settlement Agreement 33).  Under Kentucky law, the starting point for contract interpretation is to examine the plain language of the contract.  *See Ky. Shakespeare Festival, Inc. v. Dunaway*, 490 S.W.3d 691, 694 (Ky. 2016).

"When no ambiguity exists in the contract, [the court] look[s] only as far as the four corners of the document to determine the parties' intentions." *3D Enters. Contracting Corp. v. Louisville & Jefferson Cnty. Metro. Sewer Dist.*, 174 S.W.3d 440, 448 (Ky. 2005) (citation omitted). "A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations." *Hazard Coal Corp. v. Knight*, 325 S.W.3d 290, 298 (Ky. 2010) (quoting *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. App. 2002)). "If the language is ambiguous, the court's primary objective is to effectuate the intentions of the parties." *Dunaway*, 490 S.W.3d at 695 (citing *Cantrell Supply, Inc.*, 94 S.W.3d at 384).

First Mercury and Babcock are both parties to and signatories of the Settlement Agreement. (Settlement Agreement 9, 41, 42). As part of its declarations and recitals, the Settlement Agreement states:

> WHEREAS, the Parties are now desirous of memorializing and confirming the comprehensive and global settlement, including any and all claims rights, obligations, and remedies arising out of or related to the Project, the Doster Contract, the Architect Contract, the Subcontractor' Contracts, the Owner Claims, the Doster Claims, the Subcontractors' Claims, the Dispute, the Lawsuits (subject to certain exceptions enumerated herein), the Buildings, Owner, Doster, the Architect and the Subcontractors.

(Settlement Agreement 19). The term "Subcontractors" includes Babcock. (Settlement Agreement 2). As used, the term "Dispute" is defined as:

> [A]ny and all claims, causes of action, demands, remedies, costs, damages (including consequential damages), losses, expenses, interest, consultant fees, expert fees, diagnostic or investigation charges, and attorneys' fees whatsoever, whether known or unknown, accrued or unaccrued, existing or arising in the future, in law or in equity, which any or all of the Parties ever had, now have, or may hereafter have, against any of the Parties, arising from, out of, under, pursuant to, or in any connection with the Doster Contract, the Architect Contract, the Subcontractors' Contracts, Owner's Claims, Doster's Claims, Subcontractors' Claims, the Project, the Buildings, the Arbitration, the Lawsuits, or the Appeals.

(Settlement Agreement 14-15).

The Settlement Agreement provides that "[p]romptly upon Owner's notice of receipt of the Allocated Payments from First Mercury Insurance Company and Hallmark, *all parties to the Mercury*

*Lawsuit shall cause the Mercury Lawsuit to be dismissed, with prejudice*, with each Party bearing its own costs in the matter." (Settlement Agreement 28 (emphasis added)).  The term "Mercury Lawsuit" refers to this action, specifically "the civil action First Mercury Insurance Company commenced against Doster and [Babcock] in the United States District Court for the Western District of Kentucky, bearing Civil Action No. 3:21-cv-00672-GNS." (Settlement Agreement 13).  In addition, the term "Lawsuits" is defined as "collectively, the 2020 Doster Lawsuit, the 2022 Doster Lawsuit, the OIC Lawsuit, the Mercury Lawsuit, the Appeals, and the Alabama Doster Lawsuit."  (Settlement Agreement 13).

Immediately above the beginning of the signature pages, the Settlement Agreement states:

THE PARTIES DECLARE AND REPRESENT THAT THEY HAVE CAREFULLY READ ALL OF THE AGREEMENT, UNDERSTAND ALL OF THE TERMS AND CONDITIONS CONTAINED IN THIS AGREEMENT AND ACKNOWLEDGE THAT THIS IS A FULL AND FINAL RELEASE OF ALL CLAIMS OR POTENTIAL CLAIMS AGAINST EACH OTHER FOR THE CLAIMS STATED IN THIS AGREEMENT, EXCEPTING THOSE EXPLICITLY EXCLUDED OR ASSIGNED.

(Settlement Agreement 35).  While the Settlement Agreement identifies specific claims asserted by other parties which are excluded from the Settlement Agreement, this is no such exclusion for Babcock's counterclaims asserted in this lawsuit against First Mercury.

The language quoted above requiring dismissal of this action is unambiguous and clearly states the intent of the parties to the Settlement Agreement—including First Mercury and Babcock—to resolve all claims in this action except for those claims specifically excluded.[3]  In absence of any

---

[3] Kentucky law recognizes "the maxim that the expression of one thing is or implies the exclusion of another (expressio unius est exclusio alterius), often used as an aid in arriving at the intention of the parties to a contract."  *Parris v. Newbury*, 279 S.W.2d 229, 233 (Ky. 1955); *see also Loc. 761, Int'l Union of Elec., Radio & Mach. Workers, AFL-CIO v. Gen. Elec. Co.*, No. C 76-0496-L(B), 1977 WL 15604, at *1 (W.D. Ky. Dec. 9, 1977) ("The Court agrees with G.E. that this case justifies the application of the ancient maxim, expressio unius est exclusio alterius.  Had the parties intended for the Collective Bargaining Agreement to provide that the presence of a picket line was justification for absence from work, they would have incorporated such an exception into the contract.  They did not, and the Court cannot reform the contract by admitting parol evidence."  (citing *Allied Indus. Workers*

ambiguity, it is unnecessary to go beyond the four corners of the Settlement Agreement.  Accordingly, Babcock is contractually obligated to release any counterclaim it had asserted against First Mercury in this action, which Babcock has refused to do.  First Mercury is entitled to summary judgment on this basis.

### 2.    *Whether Extrinsic Evidence May Be Considered*

In opposing First Mercury's motion, Babcock seeks to rely on extrinsic evidence.  (Def.'s Resp. Pl.'s Mot. Summ. J. 20-23).  Under Kentucky law, "[t]he terms of an unambiguous contract cannot be varied by extrinsic evidence."  *O.P. Link Handle Co. v. Wright*, 429 S.W.2d 842, 844 (Ky. 1968).  "Thus, a court may not consider parol evidence when interpreting a contract unless the contract is ambiguous."  *Luttrell v. Cooper Indus., Inc.*, 60 F. Supp. 2d 629, 631 (E.D. Ky. 1998) (citing *Schachner v. Blue Cross & Blue Shield of Ohio*, 77 F.3d 889, 893 (6th Cir. 1996)).

As noted above, however, the Settlement Agreement is not ambiguous and, by its terms, Babcock agreed to release its claims against First Mercury.  Therefore, extrinsic evidence may not be considered in interpreting the Settlement Agreement.

In addition, the Settlement Agreement contains an integration or merger clause, which provides that "[t]he Parties declare and represent that no promise, inducement, or release not expressed in this Agreement has been made to that Party and that this Agreement contains the entire agreement between the Parties; the terms of this Agreement are contractual and not mere recitals."  (Settlement Agreement 34).  "[I]t is well established that an integration clause in a contract is 'a sufficient basis to consider

---

*v. Gen. Elec. Co.*, 471 F.2d 751 (6th Cir. 1973))); *Dye v. Thomas More Univ., Inc.*, No. 2:19-CV-087-CHB, 2021 WL 4006123, at *19 (E.D. Ky. Sept. 2, 2021) ("Applying that [maxim] . . . here, the relevant language in Dye's contract is unambiguous.  The Manual provides a right to appeal only to a faculty member and only 'in the event the action taken [by the hearing committee] is dismissal,' with no corresponding right to the university in the event that the hearing committee decides against dismissal.  And Kentucky law is clear that 'nothing can be added to or taken from a written contract' that is otherwise clear."  (second alteration in original) (quoting *New Life Cleaners v. Tuttle*, 292 S.W.3d 318, 322 (Ky. App. 2009))).

the agreement the complete and accurate integration of the contract.'" *In re Thirteenth Floor Ent. Ctr., LLC*, 444 B.R. 738, 747 (Bankr. W.D. Ky. 2011) (quoting *KFC Corp. v. Darsam Corp.*, 543 F. Supp. 222, 225 (W.D. Ky. 1982)); *see also Radioshack Corp. v. ConSmart, Inc.*, 222 S.W.3d 256, 260 (Ky. App. 2007) ("When the negotiations are completed by the execution of the contract, the transaction, so far as it rests on the contract, is merged in the writing." (citing *Bryant v. Troutman*, 287 S.W.2d 918, 920 (Ky. 1956))). Accordingly, the integration clause also precludes the consideration of any communications prior the execution of the Settlement Agreement.

### 3.     *Whether There Is Sufficient Evidence of Mutual Mistake*

Babcock also asserts that the dismissal of its claims against First Mercury constitutes a mutual mistake. (Def.'s Resp. Pl.'s Mot. Summ. J. 23-24; Def.'s Sur-Reply Pl.'s Mot. Summ. J. 4-8). First Mercury notes the lack of evidence to support the contention. (Pl.'s Reply Mot. Summ. J. 8-11).

To establish mutual mistake under Kentucky law, the party seeking reformation must prove three elements. *Nichols v. Zurich Am. Ins. Co.*, 423 S.W.3d 698, 702-03 (Ky. 2014). These are: (i) the party "must show that the mistake was mutual, not unilateral[;]" (ii) "[t]he mutual mistake must be proven beyond a reasonable controversy by clear and convincing evidence[;]" and (iii) "it must be shown that the parties had actually agreed upon terms different from those expressed in the written instrument." *Id.* at 703 (second alteration in original) (internal quotation marks omitted) (citations omitted).

The record does not support a finding that such a mistake was mutual. First Mercury denies that there was a mistake. (Pl.'s Reply Mot. Summ. J. 8-11). Without citing any specific evidence in making this argument, Babcock contends that "the abundance of evidence, correspondence, letters, and the behavior of the parties indicates that neither [First Mercury] nor Babcock appreciated or intended that the Settlement Agreement would operate as a dismissal of the Bad Faith Claim." (Def.'s Resp. Pl.'s Mot. Summ. J. 24). Nevertheless, Babcock has attached numerous documents relating to the arguments it has raised. Those documents reflect that Babcock's counsel expressed his client's

insistence on pursuing its bad-faith counterclaim prior to signing the Settlement Agreement and then later during a status conference with the Magistrate Judge following the execution of the Settlement Agreement. (Def.'s Resp. Pl.'s Mot. Summ. J. Ex. D, at 2-3, DN 127-4; Def.'s Resp. Pl.'s Mot. Summ. J. Ex. E, at 2, DN 127-5; Def.'s Resp. Pl.'s Mot. Summ. J. Ex. F, at 2-15, DN 127-6; Def.'s Resp. Pl.'s Mot. Summ. J. Ex. G, at 7, 10, DN 127-7; Def.'s Resp. Pl.'s Mot. Summ. J. Ex. H, at 5-6, DN 127-8; Def.'s Resp. Pl.'s Mot. Summ. J. Ex. L, at 4, DN 127-12; Def.'s Resp. Pl.'s Mot. Summ. J. Ex. M, at 10, 16, DN 127-13; Def.'s Resp. Pl.'s Mot. Summ. J. Ex. N, at 7, DN 127-14; Def.'s Resp. Pl.'s Mot. Summ. J. Ex. O, at 9-14, DN 127-15). In support of its sur-reply, Babcock also attached a letter from an attorney who represented the company in arbitration stating the resolution of the bad-faith counterclaim was not contemplated. (Def.'s Sur-Reply Pl.'s Mot. Summ. J. Ex., at 1-2, DN 136-2). Those documents, however, do not reflect any mistaken belief by First Mercury that the parties had not negotiated the resolution of all claims in this action as stated in the Settlement Agreement signed by Babcock. *See Johnson v. Holbrook*, 302 S.W.2d 608, 611 (Ky. 1957) ("A mutual mistake in respect to reformation is one in which both parties participate, each laboring under the same misconception." (citing *Kane v. Hopkins*, 218 S.W.2d 37, 39 (Ky. 1949))).

The Settlement Agreement addresses the issue of reliance and specifically provides:

> In entering into this Agreement, the Parties warrant and represent that they each have relied on their own judgment and on the advice of their respective attorneys regarding the proper, complete and agreed upon consideration and the language of this Agreement, and that no statements or representations made by any other persons or any of their agents, employees, or counsel has influenced or induced any Party to execute this Agreement.

(Settlement Agreement 31-32). In addition, the Settlement Agreement provides that "[t]he parties declare and represent that they have had the benefit of competent counsel throughout the entire proceeding and counsel has adequately explained the contents and terms of this Agreement." (Settlement Agreement 34).

For these reasons, there is insufficient evidence to establish that there was mutual mistake relating to Babcock's release of its bad-faith counterclaim. First Mercury's motion is also granted on this basis.

### 4.    *Whether the Releases Were Supported by Consideration*

Finally, Babcock argues that the Settlement Agreement is unenforceable because it lacked consideration. (Def.'s Resp. Pl.'s Mot. Summ. J. 24-25). It asserts that First Mercury gave up nothing of value to settle the bad-faith counterclaim. (Def.'s Resp. Pl.'s Mot. Summ. J. 24-25).

Every enforceable contract—including a settlement agreement—must be supported by consideration. *See Scearse v. Lewis*, 43 S.W.3d 287, 289 (Ky. App. 2001) (citing *Huff Contracting v. Sark*, 12 S.W.3d 704, 707 (Ky. App. 2000)). Consideration is defined as:

> "A benefit to the party promising, or a loss or detriment to the party to whom the promise is made. 'Benefit,' as thus employed, means that the promisor has, in return for his promise, acquired some legal right to which he would not otherwise have been entitled. And 'detriment' means that the promisee has, in return for the promise, forborne some legal right which he otherwise would have been entitled to exercise."

*Sark*, 12 S.W.3d at 706 (quoting *Phillips v. Phillips*, 171 S.W.2d 458, 464 (Ky. 1943)).

The Settlement Agreement expressly provides that "[t]he Parties hereby acknowledge the sufficiency of the consideration for this Agreement and all Paragraphs contained in this Agreement." (Settlement Agreement 32). The Settlement Agreement also reflects that First Mercury paid the sum of $1 million as part of the global settlement. (Pl.'s Reply Mot. Summ. J. 11-12; Settlement Agreement 21, 28). Babcock's contention that First Mercury paid no consideration for the release of all claims as stated in the Settlement Agreement is without merit.[4]

---

[4] Babcock also argues that the Settlement Agreement should be set aside due to duress, bad faith, or fraud to the extent that First Mercury conditioned the settlement of the dispute over its contractual obligations upon Babcock's release of its bad faith claim, which was a violation of the KUSCPA. (Def.'s Resp. Pl.'s Mot. Summ. J. 25-28). It is well-established that a Kentucky law prohibits an insurer from conditioning the settlement of the underlying claim upon the insured's release of its bad-faith claim. *See Austin v. Standard Fire Ins. Co.*, No. 2:21-00129 (WOB-CJS), 2023 WL 5253000, at *9 (W.D. Ky. Aug. 15, 2023) (citing *Belt v. Cincinnati Ins. Co.*, 664 S.W.3d 524, 535 (Ky. 2022);

### B.    Defendant's Motion for Leave to File Sur-Reply

Babcock moved for leave to file a sur-reply.  (Def.'s Mot. Leave File Sur-Reply, DN 136).  Neither the Federal Rules of Civil Procedure nor the Court's local rules permit the filing of sur-replies.  "As many courts have noted, '[s]ur-replies . . . are highly disfavored, as they usually are a strategic effort by the nonmoving party to have the last word on a matter.'"  *Liberty Legal Found. v. Nat'l Democratic Party of the USA, Inc.*, 875 F. Supp. 2d 791, 797 (W.D. Tenn. 2012) (citation omitted).  In the interest of having the issues fully briefed for consideration, this motion is granted, and the Court has considered Babcock's sur-reply in resolving the summary judgment motion.

### IV.    CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1.    Plaintiff's Motion for Summary Judgment (DN 119) is **GRANTED**, and Babcock's Counterclaims (DN 8) are **DISMISSED WITH PREJUDICE**.

2.    Defendant's Motion for Leave to File Sur-Reply (DN 136) is **GRANTED**.

3.    The Clerk shall strike this matter from the active docket.

Greg N. Stivers, Chief Judge

United States District Court

August 29, 2025

cc:    counsel of record

---

*Faith v. Great W. Cas. Co.*, No. 3:20-CV-457-RGJ, 2022 WL 36923, at *3 (W.D. Ky. Jan. 4, 2022)).  Babcock argues that the resolution reflected in the Settlement Agreement and First Mercury payment of $1 million as part of the global settlement reflects First Mercury's admission that there was coverage under the policy, which supports Babcock's bad-faith claim.  (Def.'s Sur-Reply Pl.'s Mot. Summ. J. 9-10, DN 136-1).  As the Kentucky Supreme Court noted, however, "'settlements are not evidence of legal liability, nor do they qualify as admissions of fault[,]' under Kentucky law."  *Mosley v. Arch Specialty Ins. Co.*, 626 S.W.3d 579, 587 (Ky. 2021) (alteration in original) (quoting *Hollaway v. Direct Gen. Ins. Co. of Miss.*, 497 S.W.3d 733, 739 (Ky. 2016)).  Thus, this argument likewise lacks merit.

11